UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RONALD R. VAWSER, | |
| Petitioner, | Case No. 4:10-cv-00518-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Respondent. | |

## INTRODUCTION

Ronald Vawser ("Petitioner") seeks review of the Commissioner of the Social Security Administration's final decision denying Petitioner's application for social security disability insurance benefits under Title II of the Social Security Act. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will remand to the Social Security Administration for further proceedings.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits on July 24, 2007, alleging that he had been disabled and unable to work since April 30, 2006, due to a bad back and ruptured discs with bilateral sciatica and radiculopathy. This application was denied initially and on reconsideration, and a hearing was held on March 3, 2010, before Administrative Law Judge ("ALJ") G. Alejandro Martinez. The ALJ issued a decision finding Petitioner not disabled on June 25, 2010, and Petitioner timely requested review by the Appeals Council. The Appeals Council denied Petitioner's request for review on September 22, 2010, and the ALJ's decision became the final decision of the Commissioner. Petitioner timely filed an appeal of the Commissioner's final decision to this Court on October 19, 2010. (Dkt. 1.) The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the March 3, 2010 hearing, Petitioner was represented by counsel and testified on his own behalf. During the hearing, Petitioner became confused concerning his work history and the ALJ discontinued the proceedings, directing Petitioner's counsel to produce wage records for 2008 within twenty days. The ALJ further directed Petitioner's counsel to file a one page explanation of why Petitioner's work during 2008 did not rise to the level of substantial gainful activity or, in the alternative, to seek an amendment of the onset of disability date. (AR 52-54.) A vocational expert was present at the March 3, 2010 hearing, but, because the hearing was cut short, the expert did not testify.

Following the hearing, in a letter dated March 16, 2010, Petitioner's counsel submitted Petitioner's pay stubs and time sheets for 2008, and requested Petitioner's onset of disability date be amended to January 1, 2009, because Petitioner's earnings were "very near [substantial gainful activity] for the time period in question." (AR 208-209.) Petitioner's counsel submitted another letter, dated June 1, 2010, requesting that Petitioner's onset of disability date be further amended to May 30, 2009. (AR 286.) Without reconvening the hearing, on June 25, 2010, the ALJ issued an unfavorable decision, denying Petitioner's request to amend his onset of disability date, and finding that, although Petitioner suffered from severe impairments, he retained the residual functional capacity to perform past relevant work as a parts clerk. (AR 23.) The unfavorable decision was based upon the ALJ's finding that Petitioner "continued to perform [substantial gainful activity] work long after the onset of the alleged disability and at least up to May 30, 2009." (AR 23.)

At the time of the hearing, Petitioner was fifty-three years of age (turning fifty-four the month of the hearing). Petitioner has a high school education and was enlisted in the Navy from 1974 through 1978. Petitioner's prior work experience includes working as a "Parts Person and Maintenance" between 1978 through 1997, a Service Manager from 1997 until 2006, and as a Receiving Clerk. (AR 172.) He also testified that he worked part-time as a desk clerk at Napa Auto Parts in 2008.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. At step one, the ALJ found Petitioner *had not* engaged in substantial gainful activity since his alleged onset date. (AR 19, 21.) However, as discussed more fully below, the ALJ made a contradictory finding later in his decision, finding that Petitioner had in fact engaged in substantial gainful activity up to at least May 30, 2009, which ultimately was one of the primary reasons Petitioner was found not disabled.

At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's back problems severe within the meaning of the Regulations. (AR 21.)

Step three asks whether a claimant's impairments meet or equal a listed impairment. A finding that one or more of a claimant's impairments meets or equals a listing presumptively demonstrates disability. *See* 20 C.F.R. § 404.1520(d); *See also*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1221-22 (9th Cir. 2010). Although Petitioner's treating physician opined that Petitioner's impairments met the criteria for Listing 1.04 (*Disorders of the Spine*), the ALJ found that Petitioner's impairments did not meet or equal the criteria for a listed impairment. (AR 21-22.) The ALJ rejected the treating physician's opinion based upon a finding that "the treating doctor was not receiving accurate information about the nature of the symptoms and limitations from the

claimant." (AR 21.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. Concerning Petitioner's RFC, the ALJ found that Petitioner retained the capacity to perform the full range of light work as defined in 20 C.F.R. 404.1567(b). (AR 22.) In making this finding, the ALJ found that Petitioner had an underlying medically determinable physical impairment capable of producing the complained of symptoms, but that Petitioner's allegations concerning the persistence and limiting effects of these symptoms were not credible. (AR 22-23.) This adverse credibility finding was based upon Petitioner's part time work during 2008, his request to amend his onset of disability date, and the ALJ's finding that Petitioner had not supplied his physicians with accurate information. (AR 22-23.)

At step four, the ALJ found Petitioner was able to perform his past relevant work as a parts clerk, (AR 23), which was the part time position Petitioner held during portions of 2008 and 2009. The ALJ also made an alternative finding, stating that "the claimant has the capacity for the full range of light work and therefore the Medical Vocational Rule 202.13 at his age and educational level (high school graduate) would apply and direct a finding of not disabled." (AR 23.) Based upon these findings, the ALJ held that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from April 30, 2006, through the date of this decision[, June 25, 2010]." (AR 23.)

**STANDARD OF REVIEW**

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the evidence reasonably can support either affirming or reversing a decision, the Court may not substitute its own judgment for that of the Commissioner. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). The Court, however, "must consider the

entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotations and citations omitted).

## DISCUSSION

Petitioner challenges the ALJ's decision essentially on three grounds. First, Petitioner contends that the ALJ failed to properly develop the record in this case. This failure, Petitioner argues, resulted in a decision containing inconsistent findings related to whether Petitioner engaged in substantial gainful activity after the initial alleged onset of disability date. Specifically, Petitioner points out that the ALJ found at step one of the five step analysis that Petitioner had not engaged in substantial gainful activity after 2006, but later concluded, at step four of the sequential analysis, that Petitioner could perform past relevant work based upon the finding that Petitioner had engaged in substantial gainful activity up to May 30, 2009. Petitioner argues that these findings are incompatible and require reversal.

Second, Petitioner contends that the ALJ improperly found Petitioner's allegations related to the severity of his limitations not credible. Petitioner argues that this finding is not supported by substantial evidence. Finally, Petitioner argues that the ALJ improperly rejected the opinions of Petitioner's treating physician.

Based upon the ALJ's contradictory findings, misplaced inferences, and failure to fully develop the record, and for the reasons set forth more fully below, the Court finds

that the ALJ's decision is not supported by substantial evidence and must be remanded for further proceedings consistent with this Memorandum Decision and Order.

## 1.     Duty to Fully Develop the Record

The United States Court of Appeals for the Ninth Circuit has recognized that "[t]he ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).  Claimants seeking social security benefits are, of course, ultimately responsible for providing evidence to support their claims, "[b]ut the ALJ should not be mere umpire during disability proceedings," and must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Widmark v. Barnhart*, 454 F.3d 1063, 1068-69 (9th Cir. 2006) (internal quotation marks and citations omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Id.* (citing *Smolen v. Chater*, 80 F.3d at 1288).

Petitioner argues that, by prematurely terminating the hearing (before Petitioner could fully testify to his limitations and before a vocational expert could offer an opinion concerning what work, if any, Petitioner could perform given his limitations), the ALJ failed to fully and fairly develop the record.

During the administrative hearing, as a preliminary matter, the ALJ asked Petitioner's counsel why Petitioner had chosen April 30, 2006, as the onset of disability

date. (AR 35.) Petitioner's counsel explained that Petitioner had been involved in an industrial accident in 2005 and had received workers' compensation benefits until January of 2006. (*Id.*) As Petitioner began testifying to the impact of his impairments on his current ability to work, the ALJ cut Petitioner short and informed Petitioner's counsel: "I'm not so much concerned about whether he's disabled today, 2010, I'm more concerned what do we have in the records going back four years ago, April of '06"–Petitioner's initial alleged onset of disability date. (AR 45.)

As Petitioner testified to his symptoms in 2006 and 2007, including how he was prescribed Oxycontin and Methocarbamol, required to lie down nine to ten hours throughout the day, and ultimately had to quit his part time job as a receiving clerk due to increased back pain, the ALJ again interrupted, again concerned with the onset of disability date. (AR 45-47.) The ALJ noted that the $1,600 Petitioner earned in 2007 was clearly below the substantial gainful activity threshold, but that, "he had four quarters of coverage that maintained $7,500" in 2008, "[s]o that does look like there could be some substantial gainful activity in '08." (AR 47.) The ALJ then directed Petitioner's counsel to elicit testimony concerning that time period.

Petitioner testified that, in 2008, he took another part-time job as a desk clerk at NAPA Auto Parts, working twenty hours per week. (AR 48.) As Petitioner began explaining why he could only work part-time, the ALJ again interrupted, stating "I'm not really concerned about what limitations he had in '08," and that he wanted to know when and how Petitioner had earned $7,500 in 2008. (AR 48.) In response, Petitioner testified

that he was working twenty hours per week making $10 an hour and that he believed the job lasted from January to June of 2008. (AR 49.) The ALJ then pointed out that, if Petitioner's testimony was correct, he would have made over $1,000 per month in 2008–exceeding the substantial gainful activity threshold.

The ALJ then instructed Petitioner's counsel to retrieve and submit Petitioner's earning records from NAPA Auto Parts for 2008. (AR 51-52.) The ALJ stated:

> See we have a history of a guy that was working all of his life and he's got perfect earning records going all the way back to '72. So he's been a hard working guy. And then something happened in 2006 that his wages dropped from $34,000 down to $10,000, but what happened was he stopped working in April of '06. And then he didn't work much in '07, but then something happened in '08 to spike the income. That's the NAPA job. So I need to know if that's substantial gainful activity, so we'll take it from there. And it only goes to the issue of what is the alleged onset date because if that become [sic] substantial gainful activity then you're going to have to amend your onset date, if that is not SGA then you're going to have to present the NAPA pay records for that year, '08 time period that he worked in '08 to earn these wages.

(AR 52-53.) The ALJ instructed Petitioner's counsel to submit Petitioner's earning records from NAPA Auto Parts within twenty days and further advised Petitioner's counsel that, if Petitioner's earning records for 2008 indicated work had been done at the substantial gainful activity level, Petitioner should consider amending the alleged onset date. (AR 52) ("that's all I need. And that only goes to the issue of the onset date. Now, Counselor, [if] you determine[] that there is substantial gainful activity then I would encourage you to amend the onset date.") The ALJ also advised Petitioner's counsel that,

if counsel believed that the onset date did not need to be amended, he should submit a one page letter explaining why the work performed was not substantial gainful activity. (AR 52.) With that, the hearing was concluded.

On March 16, 2010, Petitioner's counsel submitted the pay stubs and time sheets for Petitioner's part-time work at NAPA Auto Parts in 2008. (AR 210-280.) Petitioner also submitted a letter requesting that his onset of disability date be amended to January 1, 2009. (AR 208.) In the letter, Petitioner states that the earning records show that Petitioner was paid for forty hours per pay period (every two weeks) between May of 2008 and December of 2008, and that his average pay check was for $400. The letter does not concede that the earning records demonstrate substantial gainful activity, but states that, "[b]ecause this is very near SGA for the time period in question, Mr. Vawser wished to amend his AOD to 1/1/2009." (*Id.*)

In a second letter, dated June 3, 2010, Petitioner requested that his onset of disability date be further amended to May 30, 2009. (AR 282.) This second requested amendment came after Petitioner and his counsel discussed further part-time work (four hours a day, five days a week) that Petitioner performed at NAPA Auto Parts in the first and second quarters of 2009. (AR. 286.) Again, Petitioner did not concede that the part time work rose to the level of substantial gainful activity, and stated in his letter that, "We understand that by doing so [amending the onset date], a Fully Favorable decision will be issued." (AR 282.)

The ALJ issued a decision finding Petitioner not disabled on June 25, 2010. The ALJ declined Petitioner's request to amend the onset of disability date and did not reconvene the hearing or take any further testimony or evidence in any form. Petitioner argues that the premature termination of the hearing, as outlined above, resulted in a decision containing findings unsupported by substantial evidence. For the reasons that follow, the Court agrees.

A.     *Onset of Disability Date*

Social Security Ruling ("SSR") 83-20 states that, "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." SSR 83-20.[1] The onset of disability date is defined as "the first day an individual is disabled as defined in the Act and the regulations" and "[f]actors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." *Id*. Because the onset of disability date "may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits . . . it is essential that the onset date be correctly established and supported by the evidence." *Id*. The ALJ need not set an onset of disability date where none exists–i.e., where the claimant is not disabled–but such a finding must be supported by substantial evidence.

_____

[1] Social Security Rulings do not have the force of law but must be given some deference as long as they are consistent with the Social Security Act and regulations. *Ukolov v. Barnhart*, 420 F.3d 1002, n.2 (9th Cir. 2005). In *Ukolov*, the Ninth Circuit found that SSR 96-4p was consistent with the purposes of Titles II and XVI of the Social Security Act. *Id.*

**MEMORANDUM DECISION AND ORDER - 12**

Here, in his decision, the ALJ acknowledged that Petitioner twice requested that his onset of disability date be amended to a later date–first to January 1, 2009, and then to May 30, 2009. (AR 17.) The ALJ found, however, that "[n]either of these [requested amendments] changes the decision, which applies from the original alleged onset date of April 30, 2006 through the present." (*Id*.) This finding by the ALJ is not supported by substantial evidence.

As discussed more fully below, the ALJ found that Petitioner was not disabled from April 30, 2006 (the original alleged onset of disability date) to May 30, 2009 (the requested amended onset date). This decision was based upon Petitioner's part-time work at NAPA Auto Parts during that time period and the related findings that Petitioner's allegations concerning the severity of his limitations were not credible (based upon the part-time work) and his treating physician's opinions were not reliable (because Petitioner did not inform the physician of the part-time work). Even assuming the adverse credibility determination and the rejection of Petitioner's treating physician's opinions are supported by substantial evidence–which, as discussed below, they are not–it is undisputed that Petitioner's part-time work ended in May of 2009.

The only evidence in the record concerning Petitioner's limitations after May of 2009 support Petitioner's claim of disability. The record contains progress notes from Dr. Dean Williams, Petitioner's treating physician since 1993, indicating that Petitioner's back pain remained severe in February of 2009 and that he was trying to work fifteen hours per week because he desperately need the money. (AR 625.) The progress notes

also indicate that Petitioner's medications were not helping and that, in June of 2009, Petitioner could no longer work due to the pain. (AR 623.) Similarly, in July of 2009, Petitioner reported that Oxycodone was lessening his pain slightly, but that the medication caused him to get "jelly legs" and he remained unable to work part-time. (AR 622.) A progress note from September 23, 2009, indicates severe lower back pain, sciatica, and that the Oxycontin "barely makes [Petitioner's lower back] pain tolerable." (AR 621.) Finally, in 2010, Petitioner reported the worsening of his symptoms, including uncontrolled lower back pain, (AR 648, 650, 652), and Petitioner's treating physician noted a severely limited range of motion in Petitioner's lumbar spine, bilateral leg weakness, and prescribed Oxycontin for pain. (AR 648-49.)

In his decision, the ALJ notes that the "reviewing agency doctors opined that [Petitioner] was capable fo light work." (AR 23.) The records referenced, however, all are dated prior to Petitioner's requested amended onset date. In other words, the ALJ's conclusion that Petitioner could perform light work after May 30, 2009, until the date of the decision (June 25, 2010), is not supported by the medical evidence in the record.

Based on the above, the Court finds the ALJ's refusal to allow Petitioner to amend his onset of disability date is not supported by substantial evidence. On remand, the Commissioner shall re-evaluate Petitioner's request to amend his onset of disability date and, if it is again found that Petitioner is not disabled after the requested onset date, such a conclusion must be supported by substantial evidence. Moreover, if additional evidence is needed to evaluate Petitioner's request to amend his onset of disability date, the

Commissioner shall seek the submission of such evidence–whether through additional testimony or supplemental documentary submissions–in accordance with the duty to fully and fairly develop the record.

### B.    *Substantial Gainful Activity*

Petitioner contends that the ALJ made contradictory findings with respect to whether Petitioner's part-time work in 2008 and 2009 constituted substantial gainful activity. As a result of these inconsistent findings, Petitioner argues the ALJ erred in finding Petitioner could perform past relevant work at step four of the five step sequential analysis. The Court agrees.

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Given this definition, at step one of the sequential analysis, the ALJ must determine whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If a claimant is found to have engaged in substantial gainful activity after the onset of disability date, the analysis stops and a finding of not disabled is mandated under the Social Security Act. 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

Here, the ALJ found at step one that "[t]he claimant has not engaged in substantial gainful activity since April 30, 2006." (AR 19.) Then, at step four of the sequential analysis, the ALJ concluded that Petitioner "is capable of performing past relevant work as a parts clerk." (AR 23.) That conclusion, which dictated a finding of not disabled, was based upon a finding that "the claimant continued to perform SGA work long after the onset of the alleged disability and at least up to May 30, 2009." (AR 23.)

This inconsistency is fatal to the ALJ's conclusion at step four of the sequential analysis that Petitioner could perform past relevant work as a parts clerk. "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001); *See also*, SSR 82-62; 20 C.F.R. §§ 404.1571, 404.1574. "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id*. at 844-45.

Social Security Rulings identify two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82-61, and the claimant's own testimony, SSR 82-41. This is where the ALJ's conclusion fails. The ALJ concludes that Petitioner's part-time work at NAPA Auto Parts during 2008 and 2009 constituted past relevant work. Assuming that conclusion is correct, which is not clear from the record, the ALJ did not delve into the work as it was actually performed. Indeed, the ALJ cut off Petitioner's testimony at the

hearing concerning his physical limitations and Petitioner was not given the opportunity to explain what accommodations he was provided, which allowed him to work part-time despite his back pain. Similarly, although a vocational expert was present at the hearing, the ALJ terminated the proceedings without receiving testimony from the expert.

The Commissioner argues that, "[a]lthough the ALJ indicated that Plaintiff had not engaged in substantial gainful activity since the initially alleged onset date of April 30, 2006 . . . he made it clear he did so only because Plaintiff had provided insufficient documentation at step one." (*Def.'s Responsive Brief* at 11, Dkt. 20.) This argument supports Petitioner's contention that the case must be remanded for further proceedings. If the ALJ did not have enough information to determine whether Petitioner had engaged in substantial gainful activity at step one, which is a threshold question, then surely the Court cannot say that the ALJ's finding at step four that Petitioner had engaged in substantial gainful activity is supported by substantial evidence.

Based on the above discussion, the Court finds the ALJ's conclusion at step four that Petitioner could perform past relevant work is not supported by substantial evidence.[2] On remand, after addressing the appropriate onset of disability date, the Commissioner

---

[2] The ALJ's alternative finding that "the claimant has the capacity for the full range of light work and therefore the Medical Vocational Rule 202.13 at his age and educational level (high school graduate) would apply and direct a finding of not disabled" does not cure this error. Significant non-exertional impairments, such as pain, postural limitations, or environmental limitations, "may make reliance on the grids inappropriate." *Tackett v. Apfel*, 180 F.3d 1094, 1101-1102 (9th Cir. 1999). Although the ALJ found that Petitioner could perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), the ALJ did not support this conclusion with specific factual findings and did not sufficiently delve into Petitioner's non-exertional impairments.

must determine, as a threshold matter, whether Petitioner engaged in substantial gainful activity after the alleged onset date. If the Commissioner believes that additional evidence is needed to make this determination, the Commissioner shall seek the submission of additional evidence in accordance with the duty to fully and fairly develop the record.

## 2.    Credibility

In his decision, the ALJ concluded that Petitioner's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible." (AR 22.) Petitioner argues that the ALJ's rejection of Petitioner's testimony relating to the severity and limiting effects of his back pain was improper. The Court agrees.

The Ninth Circuit has established a two-part test for determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). However, at the first step, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. (internal quotations and citations omitted). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996); *see*

*also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Second, if the claimant presents objective medical evidence of an underlying impairment which could reasonably be expected to produce pain, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotations and citations omitted).

In this case, the ALJ found that "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms[.]" (AR 22.) The ALJ went on to conclude, however, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. §404.1567(b)]." (AR 22.)

The ALJ rejected Petitioner's testimony concerning the limiting effects primarily for two reasons. First, the ALJ found that Petitioner's part-time work contradicted his testimony. (AR 20-22.) Second, the ALJ repeatedly referenced Petitioner's request to amend his onset of disability date as a reason for finding Petitioner not credible. (AR 20, 22, 23.)

Concerning Petitioner's part-time work, the ALJ stated "the claimant's testimony showed that he continued to work in 2007, through 2008, and up to the end of May 2009[,] [y]et he also testified that after he ended his job in July 2007 he couldn't stand over an hour a day and had to lie down 8-9 hours per day." (AR 22.) The ALJ found

Petitioner's part-time work inconsistent with his alleged limitations and used this as a reason for rejecting Petitioner's testimony. (*Id.*)

While the regulations provide that a claimant's work history is relevant in determining whether he or she has engaged in substantial gainful activity, 20 C.F.R. § 404.1571, the Ninth Circuit has made clear that a claimant should not be penalized for attempting to work due to economic necessity notwithstanding the claim that he or she was disabled at that time. *Lingenfelter*, 504 F.3d at 1037 ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment.") (emphasis in original). Indeed, the Ninth Circuit has suggested "that similar evidence that a claimant tried to work and failed actually supported his allegations of disabling pain." *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)); *see also*, *Rosario v. Sullivan*, 875 F. Supp. 142, 146 (E.D.N.Y. 1995) (holding that substantial evidence did not support the ALJ's decision that claimant was not disabled, in part because claimant's unsuccessful work attempt weighed in favor of a disability finding).

Here, the record indicates that Petitioner worked part-time because he desperately needed the income. (AR 625.) The record also demonstrates that, despite Petitioner's attempts to work part-time, he was repeatedly required to quit due to his impairments. (*See* AR 621-625.) As the ALJ recognized, the record shows that Petitioner has been a hard working individual nearly all of his life. It appears that, since 2006, Petitioner has

attempted to remain a hard working productive member of society despite his physical limitations. He should not now be punished for attempting to work part-time due to economic necessity. On remand, the Commissioner may take into consideration the fact that Petitioner attempted to work part-time in assessing Petitioner's onset date, whether Petitioner engaged in substantial gainful activity, and as a factor in assessing Petitioner's credibility. The Commissioner may not, however, use Petitioner's attempted work alone as a basis for finding Petitioner's testimony not credible. Under the above-cited precedent, the Commissioner must also take into consideration whether the part-time work was motivated by economic necessity, whether Petitioner was given any accommodations during the work, whether Petitioner ultimately had to terminate the employment due to his impairments, and any other relevant factors.

The ALJ also referenced Petitioner's request to amend his onset of disability date as a reason for finding Petitioner not credible. (AR 20, 22, 23.) For instance, the ALJ stated:

> While it is not unreasonable to suppose that the claimant has some significant problems working because of the progression of his spinal disorder since 1993, . . . the allegations of extreme limitations and pain made to doctors and in the hearing *and the subsequent shifting to allege disability in January 2009 and then in May 2009* after stating clearly before that he was unable to work and the subsequent evidence that he has continued to work have seriously eroded the claimant's credibility.

(AR 23) (emphasis added). The inference that Petitioner's request to amend his onset of disability date somehow demonstrates that he was being less than truthful about the

severity of his limitations was improper in this case. The ALJ himself expressly stated during the hearing that Petitioner may have to amend the onset date. Petitioner should not be punished for doing as the ALJ directed. Furthermore, Petitioner never conceded that the part-time work done in 2008 and 2009 was substantial gainful activity; he simply represented that his earnings were close to that level, and for that reason sought to amend the onset date.

### 3.    Rejection of Treating Physician's Opinion

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion about a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595 (9th Cir. 1999). And, an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self -reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

In this case, Petitioner's treating physician indicated that Petitioner met the requirements for Listing 1.04 (*Disorders of the Spine*). Petitioner's treating physician also indicated on multiple occasions that Petitioner was unable to work. The ALJ rejected these opinions for various reasons. The ALJ found that "the treating doctor was not receiving accurate information about the nature of the symptoms and limitations from the claimant." (AR 21.) In his briefing, Petitioner has pointed out that, at least as it pertains to Petitioner informing his doctor that he was attempting to work, the ALJ's finding is not

supported by substantial evidence. However, because this case is being remanded for the Commissioner to make certain threshold determinations, such as whether an amended onset of disability date is appropriate and whether Petitioner engaged in substantial gainful activity after the alleged onset date, the Court will not address whether the ALJ erred in rejecting Petitioner's treating physician's opinions. The Court notes, however, that on remand, any findings related to a treating physician's opinion must be in accordance with the proper legal standards as outlined above and in light of the fact that a treating physician is in the best position to assess a claimant's physical and mental limitations.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2) This action shall be **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

3) This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).



DATED: March 6, 2012

Honorable Candy W. Dale
Chief United States Magistrate Judge